## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## (ATLANTA DIVISION)

| | | |
|---|---|---|
| CAPITOL SPECIALTY INSURANCE CORPORATION | * * * | |
| | * | |
| Plaintiff, | * | Civil Action No.: |
| | * | |
| v. | * | |
| | * | |
| SERVICE MANAGEMENT ENTERPRISE, LLC D/B/A AK SECURITY AGENCY, P.M., and W.W. | * * * * | |
| | * | |
| Defendants. | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Capitol Specialty Insurance Corporation ("CSIC"), through its undersigned counsel, files this Complaint seeking a judicial declaration that Defendant Service Management Enterprise, LLC d/b/a AK Security Agency ("Agency") is not entitled to coverage under a certain insurance policy issued to Agency in connection with pending litigation against it and seeking reimbursement of fees and expenses incurred by CSIC in providing Agency with a defense against such litigation, and alleges as follows:

## INTRODUCTION

1.      CSIC issued Commercial General Liability Policy No. CS02951493-01 to Agency for the May 25, 2019 to May 25, 2020 policy period (the "Policy"). A true and correct copy of the Policy is attached hereto as Exhibit A.

2.      On or about October 19, 2022, P.M. and W.W. ("Claimants")[1] initiated two civil actions in connection with an August 21, 2019 armed robbery, abduction, assault, battery, sexual assault, and attempted murder (the "Incident"), styled *P.M. v. Thistle Investments, LLC, et al.*, No. 2022-cv-371763 (Ga. Super. Ct., Fulton County) (the "*P.M.* Lawsuit") and *W.W. v. Thistle Investments, LLC, et al.*, No. 2022-cv-371764 (Ga. Super. Ct., Fulton County) (the "*W.W.* Lawsuit," and collectively with the *P.M.* Lawsuit, the "2022 Lawsuits"). A true and correct copy of the operative Complaints in the 2022 Lawsuits are attached hereto as Exhibits B and C.

3.      CSIC first learned of the Incident on or about October 3, 2022, when Agency tendered the 2022 Lawsuits for coverage.

---

[1] In the 2022 Lawsuits, Claimants identify themselves and the decedent only by their initials to prevent further public disclosure of their names and in the interest of their personal safety.

4.      Also around this time, on or about October 5, 2022, CSIC first learned of a prior lawsuit filed in connection with the Incident. This lawsuit was resolved prior to CSIC learning of it.  CSIC was never provided notice of this prior litigation.

5.      On November 4, 2022, CSIC denied coverage for the 2022 Lawsuits because no insureds were named in the Complaints; rather than Agency being a named defendant, an entity with similar ownership to Agency, AK Security Services, LLC ("Services"), was named as a defendant. A true and correct copy of the November 4, 2022 denial letter to Agency is attached hereto as Exhibit D.

6.      On or about August 24, 2023, Claimants amended their Complaints to add Agency as a named defendant. Again, Agency failed to notify CSIC of this change, but CSIC learned of it on its own.

7.      On or about September 19, 2023, CSIC issued a supplemental coverage letter, informing Agency that now that Agency had become a defendant, CSIC would provide it with a defense in the 2022 Lawsuits under an express reservation of rights, specifically including the right to bring a declaratory judgment action to establish that the Policy does not provide coverage for the 2022 Lawsuits. A true and correct copy of the September 19, 2023 reservation of rights letter to Agency is attached hereto as Exhibit E.

8.      The Policy precludes coverage for "bodily injury" arising out of the use of firearms, negligence in employment practices, and failure to maintain a safe

premises or warn of a dangerous environment. *See* Ex. A, Policy, Firearms and Weapons Exclusion (the "Firearms Exclusion"). The 2022 Lawsuits allege that the Incident was perpetrated through the use of firearms and occurred due to negligent employment practices and failure to maintain a safe premises or warn of a dangerous environment.

9.     The Policy also requires notice "as soon as practicable of an 'occurrence' or an offense which may result in a claim." Ex. A, Policy, Section IV.2.a.  Here, Agency delayed for more than three years before it notified CSIC of the Incident.

10.     An actual case or controversy exists between the parties regarding the interpretation and application of the Policy.

11.     Accordingly, CSIC brings this action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and Federal Rule of Civil Procedure 57, seeking a judicial determination that the Policy does not provide coverage to Agency for the 2022 Lawsuits and that CSIC is entitled to reimbursement of all amounts paid in connection with the defense of Agency in those suits.

12.     This action is currently ripe for adjudication.

## I.      THE PARTIES

13.     Plaintiff Capitol Specialty Insurance Corporation a Wisconsin-domiciled surplus lines insurer authorized to do business in both Florida and Georgia.

14.     Defendant Agency is a Florida limited liability company. Per Agency's filings with the Florida Secretary of State, Agency's sole member, Ilmira Kransova, is a natural person who, upon information and belief, resides and/or works in Florida.

15.     Defendant P.M. is a natural person who, upon information and belief, resides and/or works in Georgia. P.M. is a nominal Defendant in this declaratory judgment action against whom no affirmative relief is sought at this time, although a declaration regarding coverage will be binding on her with respect to the lack of coverage under the Policy for her claims in the *P.M.* Lawsuit.

16.     Defendant W.W. is a natural person who, upon information and belief, resides and/or works in Georgia. W.W. is a nominal Defendant in this declaratory judgment action against whom no affirmative relief is sought at this time, although a declaration regarding coverage will be binding on him with respect to the lack of coverage under the Policy for his claims in the *W.W.* Lawsuit.

## II.      JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1) because this is an action between CSIC, which is a citizen of

Wisconsin, and the Defendants, which are citizens of Florida and Georgia, and because the amount in controversy exceeds $75,000, exclusive of interests and costs.

18.     This judicial district is the proper venue for this lawsuit pursuant to 28 U.S.C. § 1391(b)(2). Upon information and belief, a substantial part of the events or omissions giving rise to the claim occurred in this District.

### III.      STATEMENT OF FACTS

**A.     Nature of the 2022 Lawsuits**

19.     On or about October 19, 2022, Claimants commenced substantively similar civil actions against, *inter alia*, Thistle Investments, LLC ("Thistle"), Middleburg Communities, LLC, Middleburg Management, LLC (collectively, with Middleburg Communities, LLC, "Middleburg"), Vesta Adams Park, LLC ("Vesta Adams"), Services,[2] and certain individuals. With respect to defendant Services, Claimants alleged that Services was negligent in its provision of security at the Vesta Adams Park Apartments at the time of the Incident.

20.     On or about August 24, 2023, Claimants filed amended Complaints adding Agency as a named defendant.

---

[2] As discussed above, Services shares common ownership with Agency, yet the two entities are distinct. Services is not an insured under the Policy.

21.     According to the Complaints, at approximately 1:00 AM on August 21, 2019, Claimants decided to travel from Vesta Adams Park Apartments to a nearby gas station.  Ex. B at ¶¶ 65–66; Ex. C at ¶¶ 65–66.

22.     While walking to the car, Claimants allegedly were assaulted at gunpoint by two unknown assailants. Ex. B at ¶¶ 65–66; Ex. C at ¶¶ 65–66.

23.     The assailants allegedly proceeded to rob Claimants at gunpoint, pistol-whipped P.M., and forced Claimants into an apartment where a friend, T.L., was sleeping. Ex. B at ¶¶ 67, 70; Ex. C at ¶¶ 67, 70.

24.     Over the next two hours, Claimants and T.L. were allegedly physically and sexually assaulted and terrorized at gunpoint. Ex. B at ¶¶ 71–75; Ex. C at ¶¶ 71–75.

25.     According to the Complaints, the attack only ended after the assailants brutally killed T.L. by shooting her in the back of her head. Ex. B at ¶ 75; Ex. C at ¶ 75.  The assailants then tried to shoot W.W., but the gun jammed. Ex. B at ¶ 75; Ex. C at ¶ 75. While the gun was jammed, Claimants escaped the apartment. Ex. B at ¶ 76; Ex. C at ¶ 76.

26.     The assailants allegedly fled the scene, leaving through an allegedly defective gate entrance that they had earlier accessed to enter the property. Ex. B at ¶ 77; Ex. C at ¶ 77.

B.    <u>**Prior Proceedings**</u>

27.    On July 22, 2021, T.L.'s mother, Alexia Williams, commenced a wrongful death action against, *inter alia*, Vesta Adams, Middleburg, and Services (the "*Williams* Lawsuit") in connection with the August 21, 2019 Incident.  A true and correct copy of the *Williams* Lawsuit Complaint is attached hereto as Exhibit F.

28.    The *Williams* Lawsuit was resolved in June 2021.  At no time was CSIC informed of the *Williams* Lawsuit, nor was CSIC informed of the Incident until much later.

29.    On April 17, 2022, Ms. Williams' counsel wrote to Vesta Adams, Middleburg, Services, and Thistle, informing them that he had been retained by Claimants in connection with the August 21, 2019 Incident.

30.    The April 17th letter purported to put the recipients on notice that Claimants were "evaluating potential premises liability claims" and seeking insurance information. CSIC did not learn of this correspondence until October 5, 2022.

C.    **The Policy**

31.    CSIC issued Commercial General Liability Policy No. CS02951493-01 to Agency for the May 25, 2019 to May 25, 2020 policy period (the "Policy"). Ex. A, Policy, Common Declarations.

32.    Subject to the Policy's terms and conditions, the Each Occurrence Limit of Liability provided by the Policy is $1,000,000 and the Aggregate Limit of Liability for all Occurrences is $2,000,000. Ex. A, Policy, Commercial General Liability Declarations. The Policy, by endorsement, also provides $2,000,000 in excess coverage.

33.    The Policy's Insuring Agreement provides, in relevant part:

**SECTION I - COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" . . . to which this insurance does not apply . . ..

Ex. A, Policy, Section I, Coverage A.1.

34.     "Bodily Injury" is defined to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Ex. A, Policy, Section V.3.

35.     "Suit" is defined to mean, in relevant part, "a civil proceeding in which damages because of 'bodily injury' . . . to which this insurance applies are alleged." Ex. A, Policy, Section V.18.

36.     The Policy's Firearms Exclusion excludes coverage for:

[A]ny claim or "suit" seeking damages or expenses due to "bodily injury" . . . or "injury" . . . arising out of, resulting from, or in connection with any of the following acts or omissions regardless of their sequence or any concurring cause.

(1)     The use of "firearms" or "weapons", whether or not caused or committed by or at the instruction of, or at the direction of or arising out of negligence of you, any insured, any person or legal entity, or any causes whatsoever. . . .

(4)     The negligent employment, investigation, hiring, supervision, training, retention, or any other employment related practice by any insured or any person or legal entity, including but not limited to contractors or subcontractors. . . .

(7)     The failure by you, any insured, or any legal entity to provide an environment safe from the use of "firearms" or "weapons" but not limited to the failure to provide adequate security, or the failure to warn others of the dangers of the environment which could contribute to "bodily injury" or failure to maintain the premises by you, any insured or any person or legal entity.

37.    "Firearms" is defined to mean "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." Ex. A, Policy, Firearms Exclusion B.1.

38.    The Policy's "Who Is An Insured" provision provides, in relevant part, that:

1. If you are designated in the Declarations as: . . .

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers. . . .

2. Each of the following is also an insured:

a. Your . . . "employees", . . . but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

Ex. A, Policy, Section II, as amended by endorsement.

39.    The Policy requires Agency to notify CSIC "as soon as practicable of an 'occurrence' or an offense which may result in a claim." Policy, Section IV.2.a.

40.    The Policy also provides that, by accepting the Policy, Agency agreed that the "statements in the Declarations are accurate and complete," that those "statements are based upon representations" Agency made to CSIC, and CSIC issued the Policy "in reliance upon [Agency's] representations." Policy, Section IV.6.

D.     **Application**

41.     The Application for the Policy was signed on May 22, 2019 and the Security Guard Questionnaire was signed on May 12, 2019.  A true and correct copy of the Application and Security Guard Questionnaire is attached hereto as Exhibit G.

42.     The Application required Agency to describe its "NATURE OF BUSINESS."  *Id.* at p 2.

43.     Agency responded: "SECURITY GUARD AGENCY (Unarmed)."  *Id.*

44.     Question 2 of the Security Guard Questionnaire's General Information section asked, "Does the applicant offer any armed security guards?"  *Id.* at p 9.

45.     Agency answered "no" to Question 2 of the Security Guard Questionnaire's General Information section.  *Id.*

46.     The Employee Information section of the Security Guard Questionnaire requested the number of "Unarmed & Armed" Security Guards and the number of "Armed" Security Guards that were employed.  *Id.* at p 10.

47.     Agency represented that five "Unarmed & Armed" and zero "Armed" Security Guards were employed.  *Id.*

48.     Agency's contract with Middleburg, however, stated that Agency was to "[p]rovide armed, uniformed security presence."  A true and correct copy of the contract is attached hereto as Exhibit H.

**D.**     **November 4, 2022 Coverage Position**

49.     On November 4, 2022, CSIC informed Agency that CSIC had no defense or indemnity obligations because the 2022 Lawsuits, at that time, were only directed to Services and Services is not an Insured under the Policy. *See* Ex. D.

50.     In the November 4, 2022 correspondence, CSIC advised that it would re-evaluate its coverage position should a "suit" be filed against Agency. *Id.*

51.     CSIC also informed Agency that even if the Policy were implicated by a "suit" naming Agency, coverage would be precluded pursuant to the Policy's Firearms Exclusion and Agency's failure to comply with the Policy's notice requirements. *Id.* CSIC also reserved its rights under the Policy's rescission provision. *Id.*

**E.**     **September 19, 2023 Coverage Position**

52.     After reviewing the 2022 Lawsuits' amended complaints (neither of which were provided by Agency), CSIC issued a supplemental coverage letter on September 19, 2023. In this correspondence, CSIC agreed to provide Agency, newly named as a defendant, with a defense in connection with the 2022 Lawsuits, subject to a full reservation of rights under the Policy. *See* Ex. E.

53.     In this correspondence, CSIC advised that it would initiate a declaratory judgment action and specifically reserved the right to recover defense costs paid on behalf of Agency upon a determination that CSIC owes no duty to defend. *Id.*

## COUNT I – Declaratory Judgment

54.    CSIC repeats and incorporates herein by reference paragraphs 1 through 53 of this Complaint as if fully set forth herein.

55.    The Firearms Exclusion broadly precludes coverage for "bodily injury" arising out of, resulting from, or in connection with the use of "firearms," whether or not caused or committed by Agency or arising out of the negligence of Agency, any other person, or any cause whatsoever, regardless of the sequence and any concurring cause.

56.    The 2022 Lawsuits allege that the assailants perpetrated the assaults through the use of firearms, including but not limited to pistol whipping P.M., holding Claimants at gunpoint while physically and sexually assaulting them, and fatally shooting T.L.

57.    Based on the 2022 Lawsuits' allegations, there is no coverage for Agency because the alleged "bodily injury" arose from the use of firearms.

58.    Because the Firearms Exclusion precludes coverage for "bodily injury" arising out of the use of "firearms," regardless of whether that use was by an insured, CSIC is entitled to a declaratory judgment that it has no duty to defend Agency in connection with the 2022 Lawsuits, that Agency is not entitled to coverage under the Policy, and that CSIC is entitled to reimbursement for fees and expenses incurred in providing Agency with a defense against the 2022 Lawsuits.

## COUNT II – Declaratory Judgment

59.    CSIC repeats and incorporates herein by reference paragraphs 1 through 58 of this Complaint as if fully set forth herein.

60.    The Firearms Exclusion broadly precludes coverage for "bodily injury" arising out of, resulting from, or in connection with the "negligent employment, investigation, hiring, supervision, training, retention, or any other employment related practice" by Agency, including contractors and subcontractors, regardless of the sequence and any concurring cause.

61.    The 2022 Lawsuits allege that the assailants were able to perpetrate their attacks due to Agency's "negligent supervision, hiring, training, and retention" of employees, with such negligence being the proximate cause of Claimants' damages.

62.    Based on the 2022 Lawsuits' allegations, there is no coverage for Agency because the alleged "bodily injury" arose from the negligent hiring, supervision, training, and retention of employees.

63.    Because the Firearms Exclusion precludes coverage for "bodily injury" arising out of the negligent hiring, supervision, training, and retention of employees, CSIC is entitled to a declaratory judgment that it has no duty to defend Agency in connection with the 2022 Lawsuits, that Agency is not entitled to coverage under the

Policy, and that CSIC is entitled to reimbursement for fees and expenses incurred in providing Agency with a defense against the 2022 Lawsuits.

## COUNT III – Declaratory Judgment

64.    CSIC repeats and incorporates herein by reference paragraphs 1 through 63 of this Complaint as if fully set forth herein.

65.    The Firearms Exclusion broadly precludes coverage for "bodily injury" arising out of, resulting from, or in connection with Agency's, or any legal entity's, failure to provide an environment safe from the use of "firearms" or "weapons," including, but not limited to, the failure to provide adequate security, or the failure to warn others of the dangers of the environment which could contribute to "bodily injury" or failure to maintain the premises, regardless of the sequence and any concurring cause.

66.    The 2022 Lawsuits allege that the assailants were able to perpetrate their attacks due to Agency's negligence in failing to "act on knowledge of prior crimes, and the surrounding high-crime area," and failing to "act to correct, prevent, or warn of prior criminal activity, loitering, trespassing, and the dangerous environment."

67.    Based on the 2022 Lawsuits' allegations, there is no coverage for Agency because the alleged "bodily injury" arose from Agency's alleged failure to

provide an environment safe from the use of "firearms" as well as the failure to warn of the dangers of the environment.

68.     Because the Firearms Exclusion precludes coverage for "bodily injury" arising out of the failure to provide an environment safe from the use of "firearms" and failure to warn of the dangers of the environment, CSIC is entitled to a declaratory judgment that it has no duty to defend Agency in connection with the 2022 Lawsuits, that Agency is not entitled to coverage under the Policy, and that CSIC is entitled to reimbursement for fees and expenses incurred in providing Agency with a defense against the 2022 Lawsuits.

## COUNT IV – Declaratory Judgment

69.     CSIC repeats and incorporates herein by reference paragraphs 1 through 68 of this Complaint as if fully set forth herein.

70.     The Policy requires the Insured to notify CSIC "as soon as practicable of an 'occurrence' or an offense which may result in a claim." Policy, Section IV.2.a.

71.     The Incident occurred on August 21, 2019.

72.     The Incident constitutes an "occurrence" that undoubtedly could have, and did, result in a claim.

73.     Agency delayed over three years before it notified CSIC of the "occurrence" on or about October 3, 2022.

74.     Because the Policy's notice provision requires notice of an "occurrence" as soon as practicable, and because Agency delayed in providing such notice for more than three years, CSIC is entitled to a declaratory judgment that it has no duty to defend Agency in connection with the 2022 Lawsuits, that Agency is not entitled to coverage under the Policy, and that CSIC is entitled to reimbursement for fees and expenses incurred in providing Agency with a defense against the 2022 Lawsuits.

## COUNT V – Rescission

75.     CSIC repeats and incorporates herein by reference paragraphs 1 through 74 of this Complaint as if fully set forth herein.

76.     Section IV.6 of the Policy provides that by accepting the Policy, Agency agreed that the "statements in the Declarations are accurate and complete," that those "statements are based upon representations" Agency made to CSIC, and CSIC issued the Policy "in reliance upon [Agency's] representations."

77.     The Application required Agency to describe its "NATURE OF BUSINESS." Ex. G at p 2.

78.     Agency responded: "SECURITY GUARD AGENCY (Unarmed)." *Id.*

79.     Question 2 of the Security Guard Questionnaire's General Information section asked, "Does the applicant offer any armed security guards?" *Id.* at p 9.

80.   Agency answered "no" to Question 2 of the Security Guard Questionnaire's General Information section.  *Id.*

81.   The Employee Information section of the Security Guard Questionnaire requested the number of "Unarmed & Armed" Security Guards and the number of "Armed" Security Guards that were employed.  *Id.* at p 10.

82.   Agency represented that five "Unarmed & Armed" and zero "Armed" Security Guards were employed.  *Id.*

83.   The Application and Security Guard Questionnaire were signed on May 22, 2019 and May 12, 2019, respectively.

84.   Prior to May 2019, Agency knew that it had contracted with Middleburg to "[p]rovide armed, uniformed security presence" at Vesta Adams.  *See* Ex. H.

85.   Accordingly, Agency's description of its Nature of Business, its response to Question 2 of the Security Guard Questionnaire's General Information section, and its response to the Employee Information section of the Security Guard Questionnaire were material misrepresentations, and the Policy is subject to rescission.

86.   CSIC is entitled to a declaratory judgment that the Policy, based on the material misrepresentations made in response to Agency's application for insurance

is subject to rescission, and thus CSIC has no duty to defend or indemnify Agency with respect to the 2022 Lawsuits.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Capitol Specialty Insurance Corporation respectfully requests that this Court:

A.      Issue a declaratory judgment that CSIC has no duty to defend Agency in the 2022 Lawsuits;

B.      Issue a declaratory judgment that the Policy provides no coverage to Agency for the 2022 Lawsuits;

C.      Issue a declaratory judgment that the Policy is subject to rescission and thus provides no coverage to Agency for the 2022 Lawsuits;

D.      Award CSIC amounts paid in connection with its defense of Agency against the 2022 Lawsuits;

E.      Award CSIC its attorney's fees, costs and expenses in connection with this lawsuit; and

F.      Order all other relief this Court deems proper and just.

Dated: November 10, 2023

Respectfully submitted,

TROUTMAN PEPPER HAMILTON
SANDERS LLP

*/s/ Crighton T. Allen*
Crighton T. Allen
Georgia Bar No. 513249
crighton.allen@troutman.com
Troutman Pepper Hamilton Sanders LLP
Bank of America Plaza
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308
(404) 885-3000 (phone)

Charles A. Jones (*Pro Hac Vice to be filed*)
tony.jones@troutman.com
Troutman Pepper Hamilton Sanders LLP
401 9th Street NW, Suite 1000
Washington, DC 20004
(202) 662-2074 (phone)

*Attorneys for Plaintiff Capitol Specialty Insurance Corporation*